IN RE the MARRIAGE OF:

Otto MOGGED, III, Petitioner-Appellant-Cross-Respondent,

v.

Margaret A. MOGGED, Respondent-Respondent-Cross-Appellant.†

Court of Appeals

*No. 99–0346. Submitted on briefs November 15, 1999.—Decided December 28, 1999.*

## 2000 WI App 39

(Also reported in 607 N.W.2d 662.)

†Petition to review denied.

On behalf of the petitioner-appellant-cross-respondent, the cause was submitted on the briefs of *Frederick J. Mohr* of Green Bay.

On behalf of the respondent-respondent-cross-appellant, the cause was submitted on the briefs of *Tim Osicka* of Wausau.

Before Cane, C.J., Hoover, P.J., and Peterson, J.

¶ 1.  PER CURIAM.  Otto Mogged, III, appeals an order vacating a previous maintenance order and setting his maintenance obligation at $2,000 per month. Margaret Mogged cross-appeals the order, contending that $2,000 per month is insufficient. We conclude that the trial court erroneously exercised its discretion when it vacated the previous maintenance order and therefore reverse and remand for further proceedings consistent with this opinion. Additionally, because Margaret's cross-appellant's brief fails to comply with rudimentary appellate procedure, *see* RULE 809.19, STATS., we strike the brief and dismiss the cross-appeal. *See* Rule 809.83(2), STATS.

1.  Facts

¶ 2.  The Moggeds were married in 1967 and divorced in 1992.[1] Of their three children, only one was a minor at the time of the divorce. Otto was president of a printing company and vice-president of a manufacturing company. The court found that his annual income at the time of the divorce was approximately $148,000 per year.

¶ 3.  The record indicates that Margaret was not employed outside the home during the marriage. The court found that Margaret received $1,800 annually from an inheritance that would end within several years. The trial court awarded Margaret $2,000 per month child support and $2,800 per month maintenance. The maintenance term was indefinite.[2] The

[1] The record shows that the divorce trial was held in August 1992, but the divorce judgment was not filed until 1994.

[2] The record indicates that the trial court issued a memorandum decision in December 1993 setting maintenance at $4,000 per month. In July 1994, the trial court determined that

court ordered an equal division of the parties' substantial assets.

¶ 4.   In June 1995, Margaret sought to increase maintenance based upon a substantial change in economic circumstances. The trial court found no basis to modify maintenance and denied her request.

¶ 5.   In October 1997, Otto sought a reduction in his maintenance obligation. Margaret had completed a course of instruction at a technical college and obtained full-time employment, starting at $2,000 per month. The parties' youngest child was graduated from high school, and Otto's child support obligation had ceased.

¶ 6.   Margaret and her attorney did not appear at the October 28 hearing on Otto's motion. The record reflects that Margaret's attorney, Tim Osicka, had written the trial court requesting a continuance due to a scheduling conflict. At the hearing, the trial judge explained that he did not receive Osicka's request until late on a Friday afternoon when he returned to his office from vacation and had no opportunity to respond to it before the hearing. The court noted that although Otto's attorney did not object to a short continuance, Osicka desired a long one. The court observed:

> I assumed that the attorney would be getting back to me if he needed to. And, of course, Mr. Osicka never did. . . . I guess what bothers me most is that he knew about this hearing for such a long time and he knew also that he had a trial starting today.[3] I

it had erroneously calculated Otto's income for maintenance purposes and issued a memorandum decision setting maintenance at $2,800, the sum later incorporated into the divorce judgment. No appeal was taken from the judgment of divorce.

[3] Osicka attaches to his appendix a letter to the trial court dated November 3, 1997. The letter states: "My medical mal-

> really don't understand why he waited until almost the last minute to try to change things.

The court denied Margaret's continuance request and in the absence of proofs to the contrary found that Margaret's employment increased her income by $2,000 per month. It granted Otto's motion and reduced his maintenance obligation to $800 per month.

¶ 7. In February 1998, Margaret brought a motion to increase maintenance based upon a change in economic circumstances pursuant to § 767.32, STATS.[4] After the hearing before a different judge, the court found that it was "clearly unfair" that Margaret did not have an opportunity to present her evidence at the October hearing.[5] It ruled that Margaret's "motion to reopen the October 28, 1997 hearing is granted." The court also found a change of circumstances due to Mar-

---

practice trial . . . settled before Monday, October 27th. However, I was busy wrapping up the case and preparing for the Minor's Settlement hearing on the case which took place at 9:00 a.m. on October 30th." Apparently, Osicka no longer had a scheduling conflict that would have interfered with his appearance at the October 28 hearing to revise maintenance.

[4] Osicka represents Margaret in this appeal. He claims to have also filed this motion on August 16, 1996, but asserts that it is not in the record and, as a result, attached a copy of the motion to his appendix. *See Jenkins v. Sabourin,* 104 Wis. 2d 309, 313–14, 311 N.W.2d 600, 603 (1981) (We do not consider documents outside the record.).

[5] This was the third judge to which the matter had been assigned. In November 1997, the original judge of record disqualified himself from any further proceedings because "this is the second case in which Attorney Osicka has called into question the integrity of the Court and has made personal attacks on the court, which this court can no longer ignore." The second judge who was assigned was removed after Osicka moved for substitution based on prejudice.

garet's employment. Based upon the parties' respective financial circumstances, it set maintenance at $2,000 per month, effective November 1, 1997. The court ruled that this sum reflected an amount reasonably necessary to sustain Margaret "in a standard of living consistent with the marriage before the divorce."

## 2. Otto's appeal

¶ 8.    Otto essentially argues that the trial court erroneously exercised its discretion when it reopened the previous maintenance order and increased his maintenance obligation. We agree. A court may relieve a party of an order for the reasons stated in § 806.07(1), STATS.[6] Once the court has determined that grounds exist, its decision to grant relief is discretionary. *Johnson v. Johnson*, 157 Wis. 2d 490, 497, 460 N.W.2d 166, 169 (Ct. App. 1990). Even if the court finds grounds to reopen a judgment, it may in its discretion determine that there are factors militating against reopening it. *Id.* at 498, 460 N.W.2d at 169. A court erroneously

[6] Section 806.07, STATS., provides:

(1)   On motion and upon such terms as are just, the court, subject to subs. (2) and (3), may relieve a party or legal representative from a judgment, order or stipulation for the following reasons:
   (a)   Mistake, inadvertence, surprise, or excusable neglect;
   (b)   Newly-discovered evidence which entitles a party to a new trial under s. 805.15 (3);
   (c)   Fraud, misrepresentation, or other misconduct of an adverse party;
   (d)   The judgment is void;
   (e)   The judgment has been satisfied, released or discharged;
   (f)   A prior judgment upon which the judgment is based has been reversed or otherwise vacated;
   (g)   It is no longer equitable that the judgment should have prospective application; or
   (h)   Any other reasons justifying relief from the operation of the judgment.

exercises its discretion if it fails "to exhibit a reasoned, illuminative mental process with which to logically connect its decision, findings and conclusions . . . ." *Steinke v. Steinke*, 126 Wis. 2d 372, 388–89, 376 N.W.2d 839, 847 (1985). The court must not stop at reciting its findings and conclusions; an exercise of discretion must set forth a discussion of factors relied upon in reaching a conclusion. *Id.* at 389, 376 N.W.2d at 847.

¶ 9.   We may not exercise discretion for the trial court. *See Wisconsin Ass'n of Food Dealers v. City of Madison*, 97 Wis. 2d 426, 434, 293 N.W.2d 540, 545 (1980). Although not required to search the record for unexpressed reasons that might have occurred to the trial court for the result it reached, *see Steinke*, 126 Wis. 2d at 386, 376 N.W.2d at 846, we may review the record to determine whether it discloses a rational basis supporting the court's discretionary decision. *Schauer v. DeNeveu Homeowner's Ass'n*, 194 Wis. 2d 62, 71, 533 N.W.2d 470, 473 (1995). When the record fails to disclose a basis for the court's decision, we reverse and remand to permit the trial court to articulate its reasoning process.

¶ 10.   Here, the trial court did not find that any reason set forth in § 806.07, STATS., existed. It did not discuss which factors led to its conclusion that it was "clearly unfair" that Margaret did not have an opportunity to present her evidence when, after receiving notice of the hearing, she did not appear. While § 806.07(1) contemplates that the court may grant relief from an order upon such terms as are just or fair, its decision must be supported by one or more of the enumerated grounds and an expression of its reasoning process.

¶ 11.   Here, a search of the record proves futile. Our review does not permit us to say how the trial court arrived at its decision to reopen the October 1997 proceedings. Our search is unaided by Margaret's brief, which fails to provide a reasoned discussion of potential grounds to support her argument that the court reached a proper result.

¶ 12.   Instead, Osicka engages in hyperbole.[7] Without challenging the trial court's finding that he received notice of the hearing date, he characterizes the October 1997 proceeding as "ex parte" and asserts that he has "little regard" for the judge who presided. With neither explication nor citation to supporting authority, he labels the denial of the last-minute continuance request as "outrageous" and made "under circumstances where Attilla the Hun would have been granted a continuance." Osicka argues that "[t]his is not a case of excusable neglect," but one of "equity/fairness." He argues that the trial court's "lack of courtesy and his almost callous proceeding to hearing on October 28th certainly is a basis [to] vacate[ ] the October 1997 order."

¶ 13.   Margaret's brief cites generally to § 806.07, STATS., but not to any specific subsection. One potential interpretation of her argument would be that subsec. (h), referring to "any other reasons justifying relief,"

---

[7] Although counsel generally determines the strategy and method by which he or she attempts to achieve the result the client desires, it is ultimately the client's desire that is material. Therefore, under usual convention we refer to the contentions as those of the litigant, here, Margaret. In this instance, however, we address matters either that Osicka has personalized or that relate primarily to counsel's failure to adhere to fundamental rules of advocacy, both appellate and in general. Therefore, we refer to the contentions as those of appellate counsel.

applies. The record, however, fails to indicate that the trial court relied on subsec. (h). Although subsec. (h) is to be liberally construed to allow relief from judgments whenever appropriate to accomplish justice, *see Conrad v. Conrad*, 92 Wis. 2d 407, 414, 284 N.W.2d 674, 677 (1979), it is appropriately used "only when the circumstances are such that the sanctity of the final judgment is outweighed by 'the incessant command of the court's conscience that justice be done in light of *all* the facts.' " *State ex rel. M.L.B. v. D.G.H.*, 122 Wis. 2d 536, 550, 363 N.W.2d 419, 426 (1985) (quoted source omitted; emphasis in original). "Because subsection (h) invokes the sensibilities of the court, the court must consider a wide range of factors . . . ." *Id.* at 552, 363 N.W.2d at 427.[8] The record fails to show the court considered any applicable factors and the trial court's brief reference to fairness is insufficient to support a subsec. (h) analysis.

¶ 14.   The record indicates that Osicka made an eleventh-hour request for a long adjournment and chose not to appear without confirming whether his request had been granted. The grant of a continuance is not a matter of right. *See State v. Wedgeworth*, 100

---

[8] In exercising its discretion, the circuit court

should consider factors relevant to the competing interests of finality of judgments and relief from unjust judgments, including the following: whether the judgment was the result of the conscientious, deliberate and well-informed choice of the claimant; whether the claimant received the effective assistance of counsel; whether relief is sought from a judgment in which there has been no judicial consideration of the merits and the interest of deciding the particular case on the merits outweighs the finality of judgments; whether there is a meritorious defense to the claim; and whether there are intervening circumstances making it inequitable to grant relief.

*State ex rel. M.L.B. v. D.G.H.*, 123 Wis. 2d 536, 552–53, 363 N.W.2d 419, 427 (1985).

Wis. 2d 514, 520, 302 N.W.2d 810, 814 (1981).[9] The court proceeded in his absence and granted relief based on the record before it. Neither the record of the hearing on Margaret's February 1998 motion nor her appellate brief provides any "reasoned, illuminative mental process" to logically connect findings with the statutory factors under § 806.07, STATS., demonstrating a rational basis to grant relief from the October 1997 order. *Steinke*, 126 Wis. 2d at 388–89, 376 N.W.2d at 847.

¶ 15. We reverse the trial court's order granting relief from the October 1997 order reducing maintenance to $800 per month. We further conclude that the court's decision to set maintenance at $2,000 must also be reversed. Section 767.32, STATS., authorizes the trial court to modify a maintenance award based upon a "substantial change in circumstances" from the previous order.[10] On remand, the trial court is directed to consider whether grounds exist under § 806.07, STATS.,

---

[9] Several factors to be balanced in the discretionary decision whether to grant a continuance, include: (1) the length of the delay requested; (2) whether the lead counsel has associates prepared to try the case in his absence; (3) whether other continuances had been requested and received; (4) the convenience or inconvenience to the parties, witnesses and the court; and (5) whether the delay seems to be for legitimate reasons. *See State v. Wedgeworth*, 100 Wis. 2d 514, 521, 302 N.W.2d 810, 814 (1981).

[10] Section 767.32(1)(a), STATS., provides:

After a judgment or order providing for . . . maintenance payments under s. 767.26 . . . the court may, from time to time, on the petition, motion or order to show cause of either of the parties, . . . revise and alter such judgment or order respecting the amount of such maintenance. . . . A revision, under this section, of a judgment or order with respect to an amount of child or family support may

to reopen the matter. If not, the court must use the October 1997 order from which to measure whether economic circumstances have substantially changed.

¶ 16.   We further conclude that the record reveals no basis for the trial court's discretionary decision making Otto's maintenance obligation of $2,000 retroactive to November 1, 1997, which created an instant arrearage. Therefore, the trial court's order is reversed, and on remand the court is directed to articulate its reasoning on this issue also.[11]

3.   Margaret's cross-appeal

¶ 17.   Next, we turn to Margaret's cross-appeal. Margaret argues that the trial court abused its discretion by: (1) failing to order sufficient maintenance; (2) not making the maintenance order retroactive to August 16, 1996, when she claims to have initially filed her motion;[12] and (3) "failing to vacate the ex parte order dated October 28, 1997."[13] Because Osicka's brief on cross-appeal fails to comply with rudimentary appellate procedure, we strike the brief and dismiss the cross-appeal.

¶ 18.   RULE 809.19(1)(e), STATS., requires that the argument section of a brief contain "the contention of the appellant . . . with citations to authorities, statutes

be made only upon a finding of a substantial change in circumstances.

[11] Because we reverse the maintenance order on the grounds stated, we do not address Otto's remaining claims of error. *See Sweet v. Berge*, 113 Wis. 2d 61, 67, 334 N.W.2d 559, 562 (Ct. App. 1983).

[12] *See* note 4.

[13] The record shows that the trial court granted relief from the October 1997 order. We can only conclude that this third issue misstates the record.

and parts of the record relied on as set forth in the Uniform System of Citation and SCR 80.02." Osicka's brief does not comply with this rule. Without citation to authority, Osicka argues:

> I believe a fortiori that by inviting a trial court or appellate court to consider the standard of living enjoyed by the parties during the marriage in a motion to revise maintenance proceeding, that the trial court or appellate court de novo can look at the economic situation of the parties as it existed at that time.

Osicka's contention is contrary to well-established law that maintenance determinations are addressed to trial court discretion to which we owe deference, *see Bisone v. Bisone*, 165 Wis. 2d 114, 118, 477 N.W.2d 59, 60 (Ct. App. 1991), and that issues of fact are reviewed under a clearly erroneous standard. *See* § 805.17(2), STATS. Osicka cites no authority for his startling proposition that our review of the "economic situation" is de novo. *See State v. Shaffer*, 96 Wis. 2d 531, 545–46, 292 N.W.2d 370, 378 (Ct. App. 1980) (Argument unsupported by legal authority will not be considered.).

¶ 19. In the next paragraph, Osicka invites the court to "review the individual and business income tax returns of Otto Mogged and the individual income tax returns of Margaret Mogged along with Margaret Mogged's expert's . . . numbers to clearly ascertain that immediately post hearing, there was a substantial change of economic circumstances as regards Otto Mogged." Contrary to § 809.19(1)(e), STATS., Osicka fails to provide record citation indicating the location of the documents and testimony relied upon. "[W]e decline to embark on our own search of the record, unguided by references and citations to specific testi-

mony, to look for . . . evidence to support [the argument]." *Tam v. Luk*, 154 Wis. 2d 282, 291 n.5, 453 N.W.2d 158, 162 n.5 (Ct. App. 1990). We have held that where a party fails to comply with the rule, "this court will refuse to consider such an argument . . . ." *Id*. (Quoted source omitted.) "[I]t is not the duty of this court to sift and glean the record *in extenso* to find facts which will support an [argument]." *Id*. (Quoted source omitted.)

¶ 20.    Osicka makes no reference to any statute or case law until page eight of his argument where, for the first time, he cites as legal authority "the LaRocque/Bahr calculation" and the "LaRocque/Bahr formula." This reference is inadequate for several reasons, the most obvious being that it is unaccompanied by case citations. It is also inaccurate. As *Gerth v. Gerth*, 159 Wis. 2d 678, 683, 465 N.W.2d 507, 510 (Ct. App. 1990), observes, there is no mechanical formula with respect to maintenance. "Such a mandate is the antithesis of discretion." *Enders v. Enders*, 147 Wis. 2d 138, 144, 432 N.W.2d 638, 641 (1988). Osicka's argument is unsupported both by legal authority and appropriate legal citation, contrary to RULE 809.19(1)(e), STATS.

¶ 21.    We would be remiss if we did not comment on the vituperative tone of Osicka's briefs in this appeal. First, Osicka makes repeated references to the October 1997 hearing as an "ex parte" proceeding. Generally, an ex parte proceeding is one in which an opposing party received no notice.[14] Osicka does not

---

[14] An ex parte proceeding is a proceeding had on application of one party only, for his benefit only and without notice to or contestation by a person adversely interested. *See In re City of Ashland*, 76 S.W.2d 43, 45 (Ky. Ct. App. 1934); *see also White v. State*, 457 P.2d 650, 652 (Alaska 1969); *National Dev. Corp. v.*

claim that he did not receive notice. Also, he offers no legal authority for his assertion that the proceeding was ex parte. Accordingly, his allegation is ungrounded in fact and law.

¶ 22. To assert that the court engaged in an ex parte proceeding not authorized by statute is misleading and amounts to an accusation of a breach of the code of judicial conduct.[15] Misleading representations such as this violate § 802.05, STATS.,[16] and "whether deliberate or careless, misdirect the attention of other lawyers and the . . . judge." *Skycom Corp. v. Telstar Corp.*, 813 F.2d 810, 819 (7th Cir. 1987). Time is scarce, and judicial resources must "not [be] frittered away"

---

*Township of Harrison*, 438 A.2d 1053, 1057 (Pa. Commw. Ct. 1982). Osicka's characterization of the hearing as ex parte under the circumstances of this case leads to absurd results. If a party may fail to appear at a noticed hearing, without the court's permission, then either the court's calendar is at the mercy of the litigant or it, and any attending counsel, are in jeopardy of violating the code of ethics by proceeding in the face of the other party's absence.

[15] "The ex parte communication prohibition set forth in the current Code of Judicial Conduct, SCR 60.04(1)(g), now makes explicit what was implicit in its predecessor. The affirmative statement introducing the current prohibition states, 'A judge shall accord to every person who has a legal interest in a proceeding, or to that person's lawyer, the right to be heard according to law.' " *In re Tessmer*, 219 Wis. 2d 708, 728, 580 N.W.2d 307, 316 (1998).

[16] Section 802.05, STATS., provides:

The signature of an attorney or party constitutes a certificate that the attorney or party has read the pleading, motion or other paper; that to the best of the attorney's or party's knowledge, information and belief, formed after reasonable inquiry, the pleading, motion or other paper *is well-grounded in fact and is warranted by existing law or a good faith argument* for the extension, modification or reversal of existing law . . . . (Emphasis added.)

attempting to ascertain the true state of the record. *See id.* Osicka's unsupported characterizations fall outside the requirements of the Wisconsin Supreme Court Rules of Professional Conduct for Attorneys.[17]

¶ 23.   Osicka's remarks also violate Standards of Courtesy and Decorum for the Courts of Wisconsin.[18] In the cross-appellate brief, he suggests that the judge presiding over the October 1997 hearing "had it in for this writer or Margaret Mogged . . . ." This remark has no place in appellate advocacy. Osicka's unprofessional expression is underscored in that he has not advanced any reasonable basis for attacking the trial court in the first instance, launching his attack from a fatuous position of entitlement to a continuance merely for the asking.

¶ 24.   We conclude that the cross-appellant's non-compliance with RULE 809.19(1)(e), STATS., merits

---

[17] The preamble to the Wisconsin Supreme Court Rules of Professional Conduct for Attorneys states: "A lawyer should demonstrate respect for the legal system and for those who serve it, including judges, other lawyers and public officials." *See also* SCR 20:3.3 (candor toward the tribunal).

[18] These standards provide, in part:

> (1)   [L]awyers . . . shall at all times do all of the following:
> (a)   Maintain a cordial and respectful demeanor and be guided by a fundamental sense of integrity and fair play in all their professional activities.
> (b)   Be civil in their dealings with one another . . . and conduct all court and court-related proceedings, whether written or oral, including discovery proceedings, with civility and respect for each of the participants.
>    . . . .
> (d)   Abstain from any conduct that may be characterized as uncivil . . . .

*Geneva Nat'l Community Ass'n v. Friedman,* 228 Wis. 2d 572, 583–84, 598 N.W.2d 600, 606 (Ct. App. 1999).

sanctions under RULE 809.83(2), STATS.[19] Accordingly, we strike the brief and dismiss the cross-appeal.

*By the Court.*—Order reversed and cause remanded with directions; cross-appeal dismissed.

---

[19] Section 809.83(2), STATS., reads:

NONCOMPLIANCE WITH RULES. Failure of a person to comply with a requirement of these rules, other than the timely filing of a notice of appeal or cross-appeal, does not affect the jurisdiction of the court over the appeal but is grounds for dismissal of the appeal, summary reversal, striking of a paper, imposition of a penalty or costs on a party or counsel, or other action as the court considers appropriate.