In re the Marriage of Ramakrishna Rao
Settipalli, Petitioner-Respondent,

v.

Sandesha Rao Settipalli, Respondent-Appellant.

Court of Appeals

*No. 03–3287. Submitted on briefs September 7, 2004.—Decided
December 7, 2004.*

2005 WI App 8

(Also reported in 692 N.W.2d 279.)

On behalf of the respondent-appellant, the cause was submitted on the briefs of *James H. Finn III* of *Law Offices of James H. Finn, S.C.*, Brookfield.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Thomas W. St. John* and *Jennifer L. Bolger* of *Friebert, Finerty & St. John, S.C.*, Milwaukee.

Before Fine, Curley and Kessler, JJ.

¶ 1. KESSLER, J. Sandesha Rao Settipalli appeals from a divorce judgment and from an order denying her motion for reconsideration.[1] She argues that the trial court erroneously exercised its discretion when it: (1) refused to leave open decisions on maintenance and property division; (2) refused to consider "undisputed evidence of increased earning capacity"; and (3) failed to properly allocate as marital debts money received by the couple from Sandesha's parents. We affirm the judgment and order. We conclude that the trial court's determinations were the result of a rational mental process that produced a reasoned and reasonable determination, which is fully consistent with established law and statutory requirements.

¶ 2. In addition, we consider Ramakrishna Rao Settipalli's motion for sanctions based on Sandesha's alleged violation of appellate rules. We conclude that sanctions are appropriate due to misrepresentations in her briefs and in her response to the motion for sanctions, and due to her failure to provide adequate citations to the record and legal authority. We conclude that Ramakrishna is entitled to costs and reasonable attorney fees associated with this appeal. We remand to the trial court for a determination of the amount of these costs and fees.

## BACKGROUND

¶ 3. Sandesha, who was raised in the United States, and Ramakrishna, who was raised in India, were married pursuant to an arranged marriage in

[1] The trial court's order denying Sandesha's motion for reconsideration was issued orally from the bench at the motion hearing. *See* WIS. STAT. § 805.17(3).

February 1995.[2] They have lived in Wisconsin since the marriage and have no children. During the marriage, they lived together sporadically. They permanently separated in the spring of 2001. Ramakrishna filed for divorce in March 2002. The matter was tried to the court over six days in 2003.

¶ 4. At trial, the primary issues were property division and maintenance. Ramakrishna testified that he graduated from medical school in India in 1989 and completed his internship in 1991. He started a residency program in India in January 1993. He stated that he left the residency program in the spring so that he could study for the United States licensing exams, which would enable him to pursue a medical career in the United States. Ramakrishna took medical exams in the United States beginning in 1996. Over the following years, he passed some and failed others. He testified that he was unsure whether he would become licensed to practice in the United States, having failed some tests more times than allowed and needing to retake some tests that he passed more than seven years earlier. As of the end of the trial, he was unemployed and was not licensed to practice medicine in the United States.

¶ 5. Sandesha testified that she has an undergraduate degree. She testified about her employment and education during the marriage, which included a brief stint as a medical school student. She presented evidence that mental health issues prevented her from working during parts of the marriage, including at the time of trial. Like Ramakrishna, her income at the time of trial was zero.

---

[2] Although there was some debate over whether the parties were legally married in India as of 1993, the trial court found that the marriage began in 1995. That finding has not been challenged on appeal.

¶ 6. One of Sandesha's arguments at trial was that she should receive a greater share of the marital estate, and increased or continued maintenance, based on contributions to Ramakrishna's career from her and her family. She and her father testified about money paid to Ramakrishna's family as part of a dowry and money expended for living expenses, test preparation and other fees. She claimed that she contributed $201,065 to the marriage, through her own employment and by receipt of $81,057 from her family. She claimed that Ramakrishna contributed only $119,326 to the marriage.

¶ 7. Ultimately, the trial court awarded Sandesha the parties' primary assets: two investment accounts in India worth approximately $10,000. Sandesha also received a lump sum maintenance award of $15,000 to be paid within thirty months with interest at twelve percent per annum on the unpaid balance. The only other assets (household items, individual bank accounts, personal property, and IRAs in the name of each individual) were awarded by stipulation to the individual who had each item in his or her possession. In explaining its decision, the court specifically found that the funds provided by Sandesha's family were not loans which were to be repaid.

¶ 8. Sandesha filed a motion for reconsideration, arguing that the maintenance and property awards should be held open because it was likely that Ramakrishna will become licensed as a medical doctor in the United States, which would greatly affect his future income. The trial court denied the motion for reconsideration, reaffirming its earlier finding that any potential increase in Ramakrishna's future income was purely speculative. This appeal followed.

344

## DISCUSSION

¶ 9. Sandesha challenges both the property division and the maintenance award, asserting that each was an erroneous exercise of discretion. She requests future compensation based on a percentage of Ramakrishna's anticipated future earnings for a period of time to be set at a later date, when Ramakrishna is earning income. Sandesha claims to be entitled to such compensation because of what she asserts was her sacrifice to help Ramakrishna become licensed as a doctor in the United States. She also contends that the monies the couple received from her parents in the form of dowry and other payments should have been returned to her parents.

¶ 10. We review the trial court's findings with respect to property division and maintenance to determine whether the court properly exercised its discretion. In the absence of an erroneous exercise of discretion, the award will be upheld. *Jasper v. Jasper,* 107 Wis. 2d 59, 63, 318 N.W.2d 792 (1982). Findings of fact will not be set aside unless they are clearly erroneous. WIS. STAT. § 805.17(2) (2001–02).[3]

¶ 11. A trial court engages in an erroneous exercise of discretion when it "fails to consider relevant factors, bases its award on factual errors, makes an error of law, or grants an excessive or inadequate award." *Olski v. Olski,* 197 Wis. 2d 237, 243 n.2, 540 N.W.2d 412 (1995). Moreover, "a discretionary determination must be the product of a rational mental process by which the facts of record and law relied upon are

[3] All references to the Wisconsin Statutes are to the 2001–02 version unless otherwise noted.

stated and are considered together for the purpose of achieving a reasoned and reasonable determination." *Hartung v. Hartung*, 102 Wis. 2d 58, 66, 306 N.W.2d 16 (1981).

¶ 12. The trial court must begin the property division analysis with the presumption that the marital estate will be divided equally, but may deviate from that presumption after considering the relevant factors identified in Wis. Stat. § 767.255(3). The weight to be given to those factors is within the discretion of the trial court. *Fuerst v. Fuerst*, 93 Wis. 2d 121, 131, 286 N.W.2d 861 (Ct. App. 1979). Here, the trial court deviated from an equal division of the disputed property by awarding *all* of it to Sandesha. Her appeal of this result is curious.

¶ 13. The record reflects an earning history of the parties that was substantially equal over the term of this short marriage. At the time of the trial, both parties were unemployed. Both parties were well-educated. Sandesha, who had a college degree, was contemplating medical school or graduate school. Ramakrishna had a medical degree and had completed two of the required three parts of the medical licensure exam. At the time of the trial, Sandesha was being treated for mental health problems and Ramakrishna had been terminated from the residency program because he failed part of the medical licensure exam.

¶ 14. The trial court properly rejected both Sandesha's request for a percentage of unknown future income as the method for calculating a future maintenance award and her request to hold open the award pending Ramakrishna's future employment. The Wisconsin Supreme Court cautioned against use of the percentage of income approach to maintenance many

years ago in *Poindexter v. Poindexter*, 142 Wis. 2d 517, 531, 419 N.W.2d 223 (1988), concluding, "the use of a percentage maintenance award should only be considered by a court when such an award is responsive to the factors enumerated in [Wis. Stat. § 767.26], and when very unusual circumstances of the case warrant a deviation from a fixed sum award." No such circumstances are present here.

¶ 15. The stipulated division of property gave each party their own checking account, personal jewelry and effects, and the IRA in each party's name.[4] Sandesha received a 1998 automobile, which Ramakrishna agreed was not part of the marital estate as it was titled in Sandesha's father's name. The portion of the property division decided by the trial court awarded Sandesha the joint stock account in India and the account in India in Ramakrishna's sole name. These two stock accounts had a total value of approximately $10,000. The trial court awarded Sandesha *all* of the disputed marital property. Sandesha's share of the total marital estate is at least an equal division and may be tilted in her favor.[5] The trial court properly exercised its discretion and explained the factors considered in coming to its decision.

---

[4] The parties' financial disclosure statements indicate that excluding tangible property, the values awarded by agreement to Ramakrishna total approximately $13,000. The values awarded by agreement to Sandesha include an IRA and jewelry that was never valued by either party and a student loan for Sandesha's own education of approximately $2500, plus money she received from her father, which she characterizes as "loans."

[5] Because the value of the IRA awarded by stipulation to Sandesha does not appear in the record or in either party's financial disclosure statement, we are unable to calculate the actual percentage of the total marital estate that she was awarded.

347

¶ 16. Sandesha asserts that her sacrifices during the marriage in furtherance of Ramakrishna's educational pursuits entitle her to additional compensation under the rationale of *Haugan v. Haugan*, 117 Wis. 2d 200, 220, 343 N.W.2d 796 (1984), and *Lundberg v. Lundberg*, 107 Wis. 2d 1, 14, 318 N.W.2d 918 (1982). These cases permit a court to compensate one spouse who sacrifices educational or other opportunities so that the earning capacity of the partner is enhanced by acquisition of a university degree or a license. *See id.* The compensation may be either by an enhanced award of maintenance or as a part of property division. Sandesha's claim to additional benefits under the *Lundberg* and *Haugan* rationale is misplaced for a variety of reasons.

■

¶ 17. Sandesha made no sacrifices to permit Ramakrishna to obtain his medical degree. He earned his degree in India in 1989. He did not bring debts from those educational efforts into the marriage. His efforts to pass the United States medical licensure exam and to complete a residency program in the United States were unsuccessful. The trial court found that Ramakrishna's earning capacity was not enhanced during the marriage and his future earnings were entirely speculative. This finding is not clearly erroneous; it is supported by substantial evidence in the record. Regardless of whether Sandesha deferred educational goals of her own during the marriage, as she asserts, there was evidence to support the trial court finding of no enhancement of Ramakrishna's earning capacity during the marriage. Consequently, there is no appropriate application in this case of the doctrines of special compensation established in *Lundberg* and *Haugan*.

¶ 18. Having examined the record and the trial court's decision, we conclude that the court's determinations were the result of a rational mental process that produced a reasoned and reasonable determination. *See Hartung*, 102 Wis. 2d at 66. Accordingly, we affirm the judgment and order.

## SANCTIONS

¶ 19. At the outset in this appeal, Ramakrishna moved to strike Sandesha's brief, to dismiss Sandesha's appeal, and for the imposition of sanctions based on Sandesha's misrepresentation of the record below and her violation of rules of this court. That motion was denied at the time, with leave to renew the request and argue for that result in the appeal. The request for sanctions is based on Sandesha's failure to provide citations to the record and authority, and her specific misrepresentations of two particularly significant facts. We examine the more serious of these alleged infractions first, and conclude that Sandesha, by her attorney, has intentionally misrepresented significant facts in the briefs filed with this court.

¶ 20. The first significant misrepresentation is the repeated incorrect assertion in Sandesha's brief that she "should be given at least the opportunity that [Ramakrishna] was given to obtain his medical license in the United States and complete his residency." As Ramakrishna points out, it is undisputed that during the marriage, Sandesha did in fact go to medical school, but dropped out due to medical reasons. Ramakrishna argues, "While not directly stating so, Ms. Settipalli implies in that statement that she gave up training or education because of or on behalf of Mr. Settipalli."

¶ 21. The second significant misrepresentation, related to the first, involves a lack of candor to this

349

court. In support of Sandesha's assertion that she sacrificed her career for Ramakrishna, she asserts that a statement by the trial court that was made as part of a colloquy between Attorney Thomas St. John (Ramakrishna's attorney) and the trial court was actually a factual finding. The colloquy occurred in the context of an objection by St. John to certain evidence. Sandesha uses an excerpted portion of this colloquy as though it were a finding of fact by the trial court that Sandesha "always wanted to go to medical school and didn't as a sacrifice to the petitioner."

¶ 22. The misrepresented statements deal with the trial court's assumption about Sandesha's expected testimony. The context of the excerpted statement makes the misrepresentation clear.

> MR. ST. JOHN: Your Honor, I have to object because A., I don't see what relevance there is to what it would take for her to go to school in India, and B., we were told this is a fact witness. This isn't fact. He is offering opinions on admissions to foreign medical schools. No basis has been established for this.
>
> THE COURT: I assume, and again I shouldn't assume, but I assume he is following these questions to establish that number one, she anticipates to go to medical school as to what her future is going to be for the next few years, and or two, she had always wanted to go to medical school and didn't as a sacrifice to the petitioner. And I only say that because there has been reference to that in the trial. I'm not –
>
> MR. ST. JOHN: – The references in the cross-examination questions of counsel, there has been no witness to testify to that and this witness isn't qualified to testify to that.

The statement by the trial court is not even arguably a finding of fact. Sandesha's attorney's representation to

the contrary in the brief is false and misleading. It suggests a conscious attempt to mislead this court.

¶ 23. Sandesha's attorney compounded this misrepresentation when, in response to Ramakrishna's motion for sanctions, he refused to acknowledge that the statement was taken out of context and, instead, argued that there was testimony to support the trial court's "finding." The response contends that the trial court's statement "supports the Court's own acknowledgement and appreciation for [Sandesha's] plight." The trial court made no such findings and Sandesha's repeated insistence that it did so is highly inappropriate.

¶ 24. In addition to these mispresentations, Sandesha's brief lacks sufficient citations to both the record and authority. For instance, she makes the following assertion without citation to legal authority:

> Clearly, this court can consider the substantial efforts of [Sandesha] and the substantial contributions brought into the marriage by her either by way of loans from her parents or gifts from her parents as substantial contributions to the marriage, which cannot be ignored by this court.

By failing to provide legal authority for the proposition that contributions from a party's parents should be considered in the divorce, she forces Ramakrishna to respond to what is a bald assertion.

¶ 25. Sandesha further asserts, without citation to the record, that "she made his life much more comfortable during his exam preparation by letting him focus on his studies while she worked and maintained the household" and that "the financial support that was loaned to [Ramakrishna] by [Sandesha's] parents to enhance [Ramakrishna's] career coupled with

[Sandesha's] earnings from 1995 to 2002 were substantial factors in contributing to the successful admission to the Medical College of Wisconsin's residency program for [Ramakrishna]." She continues, "He was allowed to live in an apartment in Chicago for 16 weeks to prepare for his studies. Had he been required to drive back and forth to Milwaukee, it would have caused additional stress and time away from his studies, which was avoided through the efforts of [Sandesha] and her family." With respect to each of these assertions, Sandesha fails to explain the source of these alleged facts, whether these facts were presented at trial, and whether these facts were found by the trial court. While she can certainly ask this court to overturn a trial court's findings of fact, she is required to candidly state that she is doing so.

¶ 26. Sandesha repeats this error when she asks this court to order Ramakrishna "to repay sums loaned to [Sandesha] for his direct benefit in the amount of $43,179 to be paid in equal monthly installments over the next seven years." Sandesha fails to mention that the trial court *explicitly found* that funds provided by Sandesha's parents were not loans.

¶ 27. In summary, we conclude that Sandesha's brief contains both omissions and affirmative misrepresentations. One of the options available to this court is to strike the brief and dismiss the appeal. *See Mogged v. Mogged*, 2000 WI App 39, ¶ 17, 233 Wis. 2d 90, 607 N.W.2d 662 (Ct. App. 1999). We choose not to dismiss the appeal as a sanction for these failings because that is a drastic remedy and because other available remedies will, we hope, discourage this type of appellate advocacy in the future. *See Smythe v. Smythe*, 225 Wis. 2d 456, 468–69, 592 N.W.2d 628 (1999).

██

¶ 28. WISCONSIN STAT. § 809.83(2) permits the court to impose a penalty or costs on a party or counsel for violation of court rules.[6] Vigorous advocacy for a client, and candor with the court, are not inconsistent requirements of our legal system. Both characteristics are expected and honored by the court and by the public. These expectations are of such long standing in, and of such importance to, our judicial system that departure from either one of those requirements is a serious matter. Recognizing that individual litigants do not generally have the knowledge or skill to write appellate briefs, and that candor with the court and compliance with court rules are primarily the responsibility of the attorney involved, we conclude that sanctions should be imposed against Sandesha's counsel. Specifically, we conclude that Ramakrishna is entitled to the costs and attorney fees he incurred or expended on this appeal. We remand to the trial court to determine the amount of costs and attorney fees to be awarded.

*By the Court.*—Judgment and order affirmed and cause remanded with directions.

[6] WISCONSIN STAT. § 809.83(2) provides:

NONCOMPLIANCE WITH RULES. Failure of a person to comply with a court order or with a requirement of these rules, other than the timely filing of a notice of appeal or cross-appeal, does not affect the jurisdiction of the court over the appeal but is grounds for dismissal of the appeal, summary reversal, striking of a paper, imposition of a penalty or costs on a party or counsel, or other action as the court considers appropriate.