COURT OF APPEALS
DECISION
DATED AND FILED

June 2, 2020

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP1632**

Cir. Ct. No. 2017CV172

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

ZYGMUND JABLONSKI, JR., A TO Z PLUMBING & HEATING, INC.
AND TRIANGLE HOLDINGS, LLC,

PLAINTIFFS-APPELLANTS,

V.

CITY OF ASHLAND,

DEFENDANT-RESPONDENT.

APPEAL from an order of the circuit court for Ashland County: EUGENE D. HARRINGTON, Judge. *Affirmed*.

Before Stark, P.J., Hruz and Seidl, JJ.

**Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1     PER CURIAM. Zygmund Jablonski, Jr., A to Z Plumbing & Heating, Inc., and Triangle Holdings, LLC, (collectively, "the Jablonski entities") appeal an order granting summary judgment to the City of Ashland on the Jablonski entities' equal protection claim. We conclude the circuit court properly dismissed the equal protection claim because the Jablonski entities' complaint failed to state a claim upon which relief could be granted. We therefore affirm.

## BACKGROUND

¶2     Jablonski is a licensed plumber and is the owner of A to Z and Triangle. Both A to Z and Triangle perform plumbing services for their customers, which sometimes require them to perform work within the City's public right-of-way ("ROW").

¶3     Chapter 501 of the City's ordinances ("the Ordinance") applies to work performed in the ROW.[1] As relevant to this appeal, § 501.05(c) of the Ordinance provides that any person "requesting permission to obstruct a right-of-way by excavation to install, reconstruct, or remove a permanent structure shall complete, submit and receive a Permanent Right-of-way Permit," subject to certain listed conditions. One of those conditions, as set forth in § 501.05(c)(6), provides that "City inspections are required for all sanitary, storm water, or water system improvements, removal or repairs within the Right-of-way" and that "[a]ny new installations or repairs to any part of the City sanitary, storm water, or water systems must be inspected before covering the work." Section 501.10(b) of the

---

[1] The Ordinance was amended on January 12, 2016, prior to the events giving rise to this appeal.

Ordinance further provides that no permit shall be issued until the applicant has filed with the City "proof of insurance … for general liability."

¶4 Section 501.03(e) of the Ordinance states that "[p]ermit fees shall be quadrupled for any work done, activity performed, or placement of items in the right-of-way without first obtaining any required permit." Section 501.05(d)(1), in turn, provides that "[t]he Public Works Director may suspend or revoke a permit if the permittee or permittee's agent, employee, or contractor is violating or has violated any provision of the permit or of applicable law." Finally, § 501.11(e) states that "[f]ailure to comply with the provisions of the approval or permit or applicable law shall give cause for the City to prohibit issuance of additional permits to the person or contractor who so violates."

¶5 In June 2016, A to Z excavated in the ROW at a property located on 12th Avenue East in Ashland, in an attempt to fix a backed-up sewer at a home located on that property. A to Z did not obtain an ROW permit from the City before beginning its work. The Jablonski entities contend that an emergency existed which prevented A to Z from obtaining a permit before starting to work in the ROW. However, it is undisputed that A to Z's equipment was at the 12th Avenue property for at least two days before A to Z started performing work there. It is also undisputed that the problem with backed-up pipes at the 12th Avenue property had existed for at least eleven years before June 2016.

¶6 At some point after A to Z began its work at the 12th Avenue property, someone from A to Z flagged down the City's utility superintendent and told him that A to Z was performing work at the property and would obtain an ROW permit for the work. Later that day, Dennis Clark—who was at that time the operations manager for the City's Public Works Department and who later became the director

of public works—went to the 12th Avenue property and observed that A to Z had broken a storm water pipe during the course of its work. While waiting for city employees to arrive to repair the storm water pipe, Clark determined that the property's sanitary line was level, instead of sloping downward away from the property. Jablonski's brother, who was the A to Z foreman at the 12th Avenue property, told Clark that A to Z would fix the sanitary pipe so that it had an appropriate slope.

¶7      Clark returned to the 12th Avenue property the following morning and "was surprised to see that the excavation had been completely backfilled," even though the City had not yet inspected A to Z's work, which Clark contended was required under § 501.05(c)(6) of the Ordinance. Moreover, Jablonski's brother informed Clark that the sanitary line had been "installed level for about 3 or 4 feet."

¶8      On June 23, 2016, Clark sent an email to Jablonski regarding the work A to Z had performed at the 12th Avenue property. Clark noted that A to Z had not obtained an ROW permit for that work and asked when Jablonski would "complete the permit and provide the associated documents." On June 30, 2016, Clark sent Jablonski a follow-up letter stating that: (1) A to Z had worked in the ROW without a permit at the 12th Avenue property; (2) the circumstances in which it did so were not an emergency; (3) although A to Z told the City it would fix the sanitary line at the 12th Avenue property so that it had an appropriate slope, A to Z ultimately repaired the sanitary line in such a way that it was level for approximately four feet; (4) although A to Z viewed the level sanitary line as being acceptable, it "may not be in compliance with DSPS [Wisconsin Department of Safety and Professional Services] requirements"; (5) A to Z backfilled the excavation at the 12th Avenue property before the City completed an inspection; and (6) it had been one week since

the work was completed, and A to Z still had not filed the appropriate paperwork to obtain an ROW permit.

¶9 Clark's June 30 letter informed Jablonski that because the work at the 12th Avenue property did not involve an emergency, "the [ROW permit] filing fee is quadrupled per ordinance." Clark also asked Jablonski to "obtain approval from the DSPS that would permit the installation of a level sanitary lateral" and to "refrain from additional work on this site or other sites within the City ROW until this matter is addressed." Finally, Clark informed Jablonski that "[i]f any additional work is required after the proper paperwork has been completed and a permit issued, a new insurance certificate will be required since the current one on file for A to Z does expire July 1, 2016."

¶10 In a letter dated July 5, 2016, Jablonski responded to Clark's June 30 letter point-by-point, disputing most of Clark's assertions. Jablonski indicated, however, that he would be "providing [Clark] the permit application once it is completed and proper signatures are obtained." Jablonski ultimately filed the permit application, but he did not pay the quadrupled fee or obtain approval from the DSPS for the installation of the level sanitary line. As a result, the City refused to issue a permit for the completed job at the 12th Avenue property and informed Jablonski that it would not issue A to Z any new permits to undertake work in the City's ROW until the issues regarding the 12th Avenue property were resolved.

¶11 Thereafter, A to Z continued to request ROW permits for unrelated work, despite the fact that it had not paid the quadrupled permit fee for the work on the 12th Avenue property or obtained approval from the DSPS for the level sanitary line. The City denied A to Z's permit requests and reminded Jablonski that "[n]ew permits for A to Z Plumbing to undertake work within the City ROW will not be

approved until open matters with the permit for [the 12th Avenue property] are resolved."

¶12 In April 2017, the DSPS sent Jablonski an email stating that the repair to the sanitary line at the 12th Avenue property was a "temporary fix" that was not "code compliant." The DSPS stated it would permit the temporary fix "until a permanent code compliant installation has been completed." After receiving a copy of the DSPS's correspondence, Clark wrote to Jablonski on June 1, 2017, stating that the City would accept A to Z's "temporary fix" at the 12th Avenue property for ninety days and listing conditions A to Z needed to fulfill before the City would issue new ROW permits to A to Z for other jobs. A to Z did not fulfill those conditions.

¶13 Sometime during 2017, A to Z expressed an interest in participating in the City's lead pipe replacement project. The City initially included A to Z on its list of prequalified contractors for the project. However, the City later determined that A to Z could not participate in the project because it was not eligible to receive ROW permits and was not current on all financial obligations owed to the City.

¶14 An additional dispute arose between Clark and Jablonski in December 2017 regarding Triangle's insurance coverage. The City's attorney concluded that an additional insured endorsement attached to A to Z's insurance policy did not provide Triangle with liability insurance coverage for damage caused by Triangle's acts. As a result, Clark denied certain ROW permit applications that Triangle had filed "for not providing an insurance certificate." Clark also advised Jablonski that until Triangle provided a valid insurance certificate, it was not approved to conduct work within the City's ROW.

¶15 The Jablonski entities filed the instant lawsuit against the City on December 18, 2017. Count I of their complaint asserted a claim under 42 U.S.C. § 1983, on two grounds. First, Count I alleged that the City's application of the Ordinance to the Jablonski entities had "deprive[d] Mr. Jablonski of his constitutional right to make a living in violation of the Privileges and Immunities Clause of the Fourteenth Amendment." Second, Count I asserted a "class of one" equal protection claim, alleging that the Jablonski entities had been "unequally treated and discriminated against (in relation to other contractors, businesses and citizens) in regard to The City's enforcement of [the Ordinance] (and other actions against Plaintiffs that are not encompassed or authorized by [the Ordinance]) in violation of the Equal Protection Clause of the Fourteenth Amendment." Count II of the Jablonski entities' complaint asserted a claim for intentional interference with contract.

¶16 The City ultimately moved for summary judgment on each of the Jablonski entities' claims. As relevant to this appeal, the City argued the Jablonski entities' complaint had failed to adequately plead a "class of one" equal protection claim. The Jablonski entities filed a memorandum of law in opposition to the City's summary judgment motion. However, the City moved to strike a portion of that memorandum because it exceeded the circuit court's twenty-five-page length limit for summary judgment briefs. In response, the Jablonski entities filed an amended memorandum that complied with the length limitation. The City therefore agreed to withdraw its motion to strike.

¶17 The circuit court held a hearing on the City's summary judgment motion on May 28, 2019. At the end of the hearing, the Jablonski entities sought permission to supplement the summary judgment record with Clark's deposition testimony. The court granted that request, and on June 6, 2019, the Jablonski

7

entities' attorney sent the court a letter containing excerpts from Clark's deposition transcript and various other documents. The deposition excerpts and other documents were not attached to an affidavit; they were simply enclosed with counsel's letter to the court.

¶18    The City objected to the Jablonski entities' attempt to supplement the record in this manner. However, the circuit court did not rule on the City's objection or otherwise address the additional documents the Jablonski entities had submitted. Instead, the court granted the City's summary judgment motion in an oral decision on July 16, 2019. The court subsequently entered a written order dismissing the Jablonski entities' complaint in its entirety. The Jablonski entities now appeal.

## DISCUSSION

¶19    On appeal, the Jablonski entities argue the circuit court erred by granting the City summary judgment on their "class of one" equal protection claim.[2] However, in so doing, the Jablonski entities have failed to comply with our Rules of Appellate Procedure. WISCONSIN STAT. RULE 809.19(1)(d) and (e) (2017-18)[3] require an appellant's brief to include a statement of the case and an argument section, both of which must include references to the appellate record. The Jablonski entities' brief contains no record citations; instead, it cites exclusively to the Jablonski entities' appendix. Such citations are improper, as an appendix is not

---

[2] As noted above, the circuit court also granted the City summary judgment on the Jablonski entities' privileges and immunities claim and on their intentional interference with contract claim. On appeal, the Jablonski entities concede that they "take no issue with" the court's dismissal of those claims. Accordingly, we do not address them further.

[3] All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

the record. *See **United Rentals, Inc. v. City of Madison***, 2007 WI App 131, ¶1 n.2, 302 Wis. 2d 245, 733 N.W.2d 322.

¶20 WISCONSIN STAT. RULE 809.19(1)(d) also provides that an appellant's statement of the case must include "a statement of facts relevant to the issues presented for review." Here, rather than setting forth the facts that are relevant to their arguments, the Jablonski entities state that they "incorporate the detailed accounting of facts set forth in [their] Memorandum of Law in Opposition to the City of Ashland's Motion for Summary Judgment, as well as [their] June [6], 2019 letter to the Circuit Court supplementing the summary judgment record, which [they] highly encourage this Court to review." The Jablonski entities then assert: "After review of the memorandum of law and letter supplementing the record, this Court should have a comprehensive understanding of the factual allegations that assert that the City of Ashland has consistently and overtly held [the Jablonski entities] out to a different standard than other citizens and contractors." The Jablonski entities' failure to set forth the facts supporting their arguments in their appellate brief is improper and has hindered our review of this appeal. We have no duty to sift through the record to find facts that support a party's argument. *See **Mogged v. Mogged***, 2000 WI App 39, ¶19, 233 Wis. 2d 90, 607 N.W.2d 662.

¶21 Moreover, we observe that the memorandum of law the Jablonski entities direct us to review appears to be their original memorandum, which exceeded the circuit court's length limitation for summary judgment briefs and was superseded by their amended memorandum. As such, the original memorandum is not properly part of the summary judgment record. The Jablonski entities also direct us to consider their June 6, 2019 letter to the circuit court, which attempted to supplement the summary judgment record. As noted above, however, the

documents enclosed with that letter were not attached to an affidavit and therefore were not in proper evidentiary form.

¶22    "An appellate court is not a performing bear, required to dance to each and every tune played on an appeal." *State v. Waste Mgmt. of Wis., Inc.*, 81 Wis. 2d 555, 564, 261 N.W.2d 147 (1978), *superseded by statute on other grounds as recognized in State v. Curtis*, 218 Wis. 2d 550, 556, 582 N.W.2d 409 (Ct. App. 1998).  The Wisconsin Court of Appeals, in particular, is a fast-paced, high-volume court, and we "cannot serve as both advocate and judge."  *State v. Pettit*, 171 Wis. 2d 627, 647, 492 N.W.2d 633 (Ct. App. 1992).  We caution counsel for the Jablonski entities that future violations of the Rules of Appellate Procedure may result in sanctions, including the dismissal of an appeal or the striking of noncompliant briefs.  *See* WIS. STAT. RULE 809.83(2).

¶23    We now turn to the merits of the parties' appellate arguments.  We do so despite the Jablonski entities' rule violations because we are able to address the arguments without the need to reference the Jablonski entities' memorandum of law and June 6, 2019 letter.  As noted above, the Jablonski entities argue the circuit court erred by granting the City summary judgment on their "class of one" equal protection claim.  We independently review a grant of summary judgment, using the same methodology as the circuit court.  *Hardy v. Hoefferle*, 2007 WI App 264, ¶6, 306 Wis. 2d 513, 743 N.W.2d 843.  Under that methodology, our first step is to determine whether the plaintiff's complaint states a claim upon which relief can be granted.  *Broome v. DOC*, 2010 WI App 176, ¶9, 330 Wis. 2d 792, 794 N.W.2d 505.  "This is the same analysis as that employed on a motion to dismiss for failure to state a claim."  *Id.*, ¶12.  Whether a complaint states a claim upon which relief can be granted is a question of law that we review independently.  *Data Key*

*Partners v. Permira Advisers LLC*, 2014 WI 86, ¶17, 356 Wis. 2d 665, 849 N.W.2d 693.

¶24 To survive a motion to dismiss for failure to state a claim, a complaint must contain "[a] short and plain statement of the claim, identifying the transaction or occurrence or series of transactions or occurrences out of which the claim arises and showing that the pleader is entitled to relief." WIS. STAT. § 802.02(1)(a); *see also Data Key*, 356 Wis. 2d 665, ¶20. Stated differently, "a complaint must plead facts, which if true, would entitle the plaintiff to relief." *Data Key*, 356 Wis. 2d 665, ¶21. When determining whether a complaint states a claim, we must accept all well-pleaded facts in the complaint as true, but we cannot add facts to the complaint, and we do not accept as true any legal conclusions stated therein. *Id.*, ¶19.

¶25 "[T]he sufficiency of a complaint depends on [the] substantive law that underlies the claim made because it is the substantive law that drives what facts must be pled." *Id.*, ¶31. "If proof of the well-pleaded facts in a complaint would satisfy each element of a cause of action, then the complaint has stated a claim upon which relief may be granted." *Cattau v. National Ins. Servs. of Wis., Inc.*, 2019 WI 46, ¶6, 386 Wis. 2d 515, 926 N.W.2d 756, reconsideration denied, 2019 WI 84, 388 Wis. 2d 652, 931 N.W.2d 538.

¶26 Here, the parties dispute whether the Jablonski entities' complaint states a "class of one" equal protection claim.[4] "The Equal Protection Clause guards

---

[4] As an initial matter, the Jablonski entities argue that the circuit court erroneously dismissed Count I of their complaint in its entirety—including their equal protection claim—based on the court's determination that Count I failed to state a privileges and immunities claim. The Jablonski entities are not entitled to relief on this basis. Regardless of whether the circuit court employed the correct analysis, we independently review whether the Jablonski entities' complaint adequately states a "class of one" equal protection claim. *See Data Key Partners v. Permira Advisers LLC*, 2014 WI 86, ¶17, 356 Wis. 2d 665, 849 N.W.2d 693.

against government discrimination on the basis of race and other immutable characteristics, but it also extends to protect people from so-called 'class-of-one' discrimination in which a government arbitrarily and irrationally singles out one person for poor treatment." **Brunson v. Murray**, 843 F.3d 698, 705 (7th Cir. 2016). "A class-of-one plaintiff must plead and prove that he [or she] was 'intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" **D.B. v. Kopp**, 725 F.3d 681, 685-86 (7th Cir. 2013) (quoting **Engquist v. Oregon Dep't of Agric.**, 553 U.S. 591, 601 (2008)).

¶27　The Jablonski entities' complaint does not satisfy these pleading requirements. First, the complaint does not allege that the City treated the Jablonski entities differently from others who were *similarly situated*. To be similarly situated for purposes of a "class of one" equal protection claim, a comparator "must be identical or directly comparable to the plaintiff in all material respects." **Reget v. City of La Crosse**, 595 F.3d 691, 695 (7th Cir. 2010). The Jablonski entities' complaint names eight individuals or entities that the City allegedly treated differently from the Jablonski entities when applying and enforcing the Ordinance. However, the complaint does not allege that those comparators are similarly situated to the Jablonski entities, nor does it allege facts that would permit one to draw that conclusion.

¶28　At most, the complaint alleges that, like the Jablonski entities, the named comparators performed work in the City's ROW. But that allegation, in and of itself, is insufficient to show that the named comparators are "identical or directly comparable to [the Jablonski entities] in all material respects." *See id.* As the City aptly explains:

> [I]n a busy public works office it is certainly possible that things can "slip through the cracks" from time-to-time and

> that a[n] ROW permit could be issued inadvertently to an applicant before the required fee had been paid or proof of insurance received. Obviously, that person is not directly comparable to one who refuses to obtain a permit, refuses to provide required insurance information to the City, refuses to correct non-code compliant work, etc.

Without any allegations that would give rise to an inference that the named comparators are similarly situated to the Jablonski entities, their complaint fails to state a "class of one" equal protection claim.

¶29 The Jablonski entities' complaint is also deficient because it fails to allege that the City lacked a rational basis for treating the named comparators differently. To survive a motion to dismiss for failure to state a claim, a plaintiff asserting a "class of one" equal protection claim "must allege facts sufficient to overcome the presumption of rationality that applies to government classifications." *Wroblewski v. City of Washburn*, 965 F.2d 452, 460 (7th Cir. 1992). The Jablonski entities' complaint does not allege any facts that, if proven, would overcome the presumption that the City had a rational basis for its allegedly different treatment of the named comparators.

¶30 Finally, in addition to alleging that the City treated the named comparators differently from the Jablonski entities when applying and enforcing the Ordinance, the complaint also asserts that the City violated the Jablonski entities' right to equal protection by taking "other actions … that are not encompassed or authorized by [the Ordinance]." However, a municipality can be sued under 42 U.S.C. § 1983 only where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers" or where the action in question amounts to a governmental "custom." *Monell v. Department of Soc. Servs.*, 436 U.S. 658, 690 (1978).

13

¶31    The Jablonski entities' allegation that the City violated their right to equal protection through "other actions" is therefore insufficient, as it does not allege that the City acted pursuant to a policy statement, ordinance, regulation, officially adopted or promulgated decision, or governmental custom.  Moreover, the Jablonski entities do not identify any similarly situated comparators with respect to the City's "other actions" or allege that the City lacked a rational basis for any disparate treatment.  As such, the Jablonski entities' allegation that the City violated their right to equal protection through "other actions" is insufficient to state a "class of one" equal protection claim.

*By the Court.*—Order affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)5.