COURT OF APPEALS
DECISION
DATED AND FILED

March 18, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2021AP685**

STATE OF WISCONSIN

Cir. Ct. No. 2019PR48

IN COURT OF APPEALS
DISTRICT III

IN THE MATTER OF THE ELEANOR M. GRISWOLD REVOCABLE TRUST
AND THE ELEANOR GRISWOLD IRREVOCABLE TRUST:

GREG GRISWOLD,

    APPELLANT,

  V.

KATHY THOMPSON, AS TRUSTEE FOR THE ELEANOR M. GRISWOLD
REVOCABLE TRUST AND THE ELEANOR GRISWOLD IRREVOCABLE TRUST,

    RESPONDENT.

       APPEAL from a judgment and orders of the circuit court for Outagamie County: VINCENT R. BISKUPIC, Judge. *Affirmed*.

       Before Stark, P.J., Hruz and Gill, JJ.

       **Per curiam opinions may not be cited in any court of this state as precedent or authority, except for the limited purposes specified in WIS. STAT. RULE 809.23(3).**

¶1 PER CURIAM. Greg Griswold, pro se, appeals from a judgment and orders entered in this action, wherein he challenges the administration of two trusts involving his deceased aunt and other members of his family. We affirm the circuit court in all respects.

## BACKGROUND

¶2 On June 28, 2013, Eleanor M. Griswold ("Eleanor") executed the Eleanor M. Griswold Revocable Trust ("the Revocable Trust") and the Eleanor Griswold Irrevocable Trust ("the Irrevocable Trust") (collectively, "the Trusts").[1] The Trusts were for the lifetime benefit of Eleanor, who died on August 8, 2018. Kathy Thompson is the Trustee of the Trusts, and she is also the court-appointed personal representative of Eleanor's estate ("the Estate") in Outagamie County case No. 2018PR45.

¶3 The Trusts contain provisions for the distribution of assets, totaling approximately $2 million in value after Eleanor's death, as well as for the payment of taxes and expenses. The Trusts require a distribution of $100 to Eleanor's niece Karen Hendrickson, with the balance of the Trusts' assets to be distributed in equal percentages to Eleanor's ten other nieces and nephews, two of whom are Greg Griswold and Thompson. The Trusts direct that distributions for Griswold are to be held in a separate irrevocable trust for his lifetime benefit.

¶4 Pursuant to the Trusts' terms, Thompson was required to prepare an account for each Trust. Accordingly, on September 20, 2019, Thompson initiated this action before the circuit court, filing a "Petition for Instructions and

---

[1] The Revocable Trust was originally dated February 8, 1995, and was restated in its entirety in June 2013.

Confirmation of Trustee Authority." Thompson informed the court of Griswold's various other litigation following Eleanor's death (which we discuss more below) and noted that administration of the Trusts would continue until Outagamie County case No. 2018PR45 concluded. Given Griswold's other litigation and "frequent demands for distributions from the Trusts," Thompson asked whether interim distributions should be made or whether she should wait to make distributions until the final accounts were approved.

¶5 Prior to filing the petition, Thompson had already made partial distributions from the Irrevocable Trust, totaling $83,568.70 per beneficiary (including to Griswold's trust) and the $100 to Hendrickson. In early 2021, the circuit court in this case authorized additional partial distributions from both Trusts. The distribution of the balance of the Trusts' assets has been delayed, pending resolution of this appeal.

¶6 As noted, Griswold has commenced various lawsuits regarding the Trusts, Thompson's actions as trustee, and the Estate. First, on September 24, 2018, Griswold filed a "Petition to Order Person with Custody of Will to File with Probate Court, and Appoint a Different Personal Representative and Attorney to Hereinafter Represent Estate" in Outagamie County case No. 2018PR45. The Honorable Vincent R. Biskupic presided over that case. Judge Biskupic was also assigned, at random, to preside over this case following Thompson's motion for judicial substitution.

¶7 Only a few weeks after he initiated Outagamie County case No. 2018PR45, Griswold filed a complaint against Thompson, individually, with respect to her actions as trustee, in Dane County case No. 2018CV2952. In February 2019, Griswold voluntarily dismissed the Dane County lawsuit. Then, in

August 2019, he filed another complaint against Thompson, mirroring the one from the Dane County lawsuit, in Outagamie County case No. 2019CV796.

¶8    Following extensive motion practice, on November 29, 2018, the circuit court denied Griswold's petition in its entirety in Outagamie County case No. 2018PR45, rejecting several subsequent motions for reconsideration filed by Griswold. About a year later, the circuit court granted Thompson's motion and dismissed Outagamie County case No. 2019CV796. What remained thereafter was this case, Outagamie County case No. 2019PR48, specifically regarding the administration of the Trusts.

¶9    In this case, Griswold filed, by his own admission, "about 59 motions, petitions, etc." The filings included numerous motions for judicial substitution, motions for reconsideration, a motion for partial summary judgment, motions to strike, motions for recusal, and a petition for discovery. The circuit court denied almost all of these motions throughout the course of this case. Griswold's principal submission was his June 15, 2020 pleading denominated as "Complaint and Demand for 12 Person Jury Trial."[2]

¶10    In a February 2021 order, the circuit court dismissed Griswold's claims against Thompson alleged in his "[c]omplaint," denied all of Griswold's remaining motions, and ordered Thompson to file final accounts for the court's approval. Thompson did so, and on March 31, 2021, the court approved the final accounts, but the court retained jurisdiction of the case to approve any final distributions of amounts held back to pay for litigation fees still accruing because

---

[2] Relatedly, Griswold filed a separate "Index of Exhibits to Complaint," which included forty-four exhibits as well as a "Petition for Instructions."

of a potential appeal. The court also determined that the attorney fees awarded to Thompson would be deducted from Griswold's beneficial share of the Trusts.

¶11 Griswold now appeals. Additional facts will be provided as necessary below.

## DISCUSSION

¶12 As an initial matter, we note that, for a variety of reasons, most of Griswold's briefing is difficult to comprehend. These reasons include frequent adverb-and-adjective-laden run-on sentences, inordinate repetition, unstructured prose, frequently missing record citations to particular pages of documents, and overblown rhetoric—including disrespectful comments regarding the circuit court judges involved in this case. These deficiencies have severely inhibited our ability to discern Griswold's arguments and, thus, clearly and efficiently address them.[3]

¶13 We considered dismissing this appeal based on these numerous failings, pursuant to our authority under WIS. STAT. RULE 809.83(2) (2023-24).[4] After due consideration, we decide to reach the merits. However, to the extent we do not address any arguments that Griswold intended to make, we deem such arguments as either insufficiently developed or without merit, and we reject them accordingly. *See State v. Pettit*, 171 Wis. 2d 627, 646-47, 492 N.W.2d 633 (Ct. App. 1992) (declining to address undeveloped arguments); *see also State v. Waste Mgmt. of Wis., Inc.*, 81 Wis. 2d 555, 564, 261 N.W.2d 147 (1978),

---

[3] In Griswold's brief-in-chief and his reply brief, he claims to have a "writing handicap" and a "mental handicap," respectively. While we are sensitive to this claim, Griswold has failed to sufficiently explain the nature or impact of his claimed handicaps.

[4] All references to the Wisconsin Statutes are to the 2023-24 version unless otherwise noted.

5

*superseded by statute on other grounds as recognized in* **State v. Curtis**, 218 Wis. 2d 550, 556, 582 N.W.2d 409 (Ct. App. 1998).

¶14    While Griswold frames his issues on appeal as being eight in number, we believe they best fit into six categories:  (1) the circuit court failed to conduct any evidentiary hearings on Griswold's motions and other pleadings; (2) the court erroneously denied Griswold's motions for judicial substitution; (3) the court erred by denying Griswold's requests for fee waivers; (4) the court erred by denying Griswold's discovery requests against Thompson; (5) the court erred on the merits by dismissing Griswold's June 15, 2020 pleading and denying him any relief; and (6) the court erred by ordering, based on the court's application of WIS. STAT. § 701.1004(1), that the attorney fees award would be deducted from the Trusts' beneficial share to him and by failing to explain sufficiently its reasoning in setting the amount of attorney fees awarded against him.  We address each set of his contentions in turn.

**I.  Griswold fails to establish that the circuit court erred by not holding evidentiary hearings on Griswold's motions and other pleadings.**

¶15    Griswold first argues, albeit quite summarily, that the circuit court erroneously exercised its discretion by failing to hold any evidentiary hearings on his numerous motions and other pleadings.  He argues only that "[n]otwithstanding what were about 59 motions, petitions, etc. filed, not once was an evidentiary hearing conducted."  We agree with Thompson that Griswold's argument in this regard is insufficiently developed for us to conclude that there was any error.  We need not address undeveloped arguments, and we decline to do so here.  *See **Pettit**,* 171 Wis. 2d at 646-47.

¶16     In particular, Griswold fails to specify which motions he believed required a hearing, what evidence he would have presented if a hearing had been held, why that evidence was necessary to decide his motions, and how that evidence would have affected the outcome of any of his vast number of pleadings seeking relief. Griswold's mere disagreement with the circuit court's decisions on whether an evidentiary hearing was warranted does not mean that the court erred by deciding not to hold a hearing. Rather, a hearing is needed only if the court cannot decide a matter based upon the written submissions as a matter of law, such as when there is a showing of a disputed issue of material fact. *See, e.g.*, ***Midwest Devs. v. Goma Corp.***, 121 Wis. 2d 632, 651-52, 360 N.W.2d 554 (Ct. App. 1984) (determining that no hearing is necessary when a party does not dispute a material issue of fact). Here, the court, in its discretion, clearly decided that no hearing was necessary; again, Griswold makes no argument showing that decision was erroneous.

¶17     Furthermore, Griswold does not develop a coherent argument that the circuit court's failure to hold evidentiary hearings for his various motions denied him due process, a challenge that we would review de novo. *See **State v. Aufderhaar***, 2005 WI 108, ¶10, 283 Wis. 2d 336, 700 N.W.2d 4. Notably, Griswold does not argue that he was not provided with either notice of all proceedings in this lawsuit or with an opportunity to be heard, even if that opportunity was only in writing. It appears from the record that the court provided all the process that Griswold was due.

## II. The circuit court properly denied Griswold's requests for judicial substitution.

¶18     After Thompson timely requested judicial substitution, pursuant to WIS. STAT. § 801.58(1) and (5), Judge Biskupic was assigned to preside over this case on October 16, 2019. As noted above, Judge Biskupic was also the judge in

the corresponding probate action for the Estate, which was still ongoing. Two days later, Griswold filed a Petition for Leave to Intervene, in which he attempted to set forth good cause to intervene as a party; argued numerous issues of merit regarding the administration of the Estate and the Trusts; and asked to consolidate this case with Outagamie County case No. 2019CV796, which was then pending before the Honorable Mitchell J. Metropulos. Three days later, on October 21, 2019, Griswold filed his first request for judicial substitution in this case, which was timely made. Shortly thereafter, and before the circuit court ruled on that motion, Griswold filed a number of pleadings in this case, including substantive pleadings.

¶19   The circuit court formally, albeit summarily, denied Griswold's request for judicial substitution on December 23, 2019, and Griswold then renewed his request a month later. Shortly thereafter, he also moved to strike all orders entered by the court after October 23, 2019, claiming that the court lacked jurisdiction to enter them. The court denied Griswold's renewed request for judicial substitution, this time in a written order entered on February 4, 2020. Subsequently, after conducting a review under WIS. STAT. § 801.58(2), the Honorable Carrie A. Schneider, the deputy chief judge for the applicable judicial administrative district, affirmed the denial of Griswold's judicial substitution request in a written order entered on March 3, 2020.[5]

---

[5] We agree with Griswold that because the circuit court did not rule on Griswold's October 21, 2019 substitution request within seven days, WIS. STAT. § 801.58(2) required the clerk of courts to refer the matter to the chief judge at that time, which apparently did not occur. However, substantive statutory review of the court's rulings on Griswold's various requests for substitution was completed by Judge Schneider, affirming the denials.

Griswold does not cite any authority to support his argument that any such delay deprived the circuit court of competency to proceed. Therefore, we will not consider that argument. *See State v. Pettit*, 171 Wis. 2d 627, 646, 492 N.W.2d 633 (Ct. App. 1992). Regardless, as Judge Schneider correctly noted in her order, "[i]f Judge Biskupic properly denied the [r]equests for [j]udicial [s]ubstitution, he retained competency over Griswold's other motions."

¶20    Griswold argues that the circuit court (and Judge Schneider) erred by denying his requests for judicial substitution. As relevant to this appeal, WIS. STAT. § 801.58(1) requires judicial substitution if the written request for it is made "preceding the hearing of any preliminary contested matters and, … if by any [party other than the plaintiff], not later than 60 days after service of a summons and complaint upon that party." *Id.* Interpreting § 801.58(1), including its phrases "preliminary contested matters" and "the hearing of" such matters, is a matter of statutory interpretation, which we review de novo. *See State v. Matthews*, 2021 WI 42, ¶¶7-9, 397 Wis. 2d 1, 959 N.W.2d 640. The goal of statutory interpretation is to give the statutory text its "full, proper, and intended effect," applying the rules stated in *State ex rel. Kalal v. Circuit Court for Dane County*, 2004 WI 58, 271 Wis. 2d 633, 681 N.W.2d 110, and its progeny. *Matthews*, 397 Wis. 2d 1, ¶9.

¶21    Griswold contends that his requests for judicial substitution were made before the hearing of any preliminary contested matter, as required by WIS. STAT. § 801.58(1).[6] We disagree and conclude that the circuit court properly interpreted and applied the law.

¶22    Griswold ignores the significant fact that, as both Judge Biskupic and Judge Schneider recognized, the claims Griswold raised in this matter were identical to those he had already raised—quite extensively, as it were, and which had already been ruled upon by Judge Biskupic—in Outagamie County case No. 2018PR45. By Griswold's own admission, he asked the circuit court in both actions to address

---

[6] Prior to the assignment of Judge Biskupic to this case, it was assigned to the Honorable Emily I. Lonergan, who apparently did not preside over any other matter involving the Estate or the Trusts. Griswold did not oppose Thompson's request to substitute Judge Lonergan. Furthermore, he never argued, either below or now on appeal, that the circuit court should have denied Thompson's substitution request because the hearing of preliminary contested matters had already occurred in Outagamie County case No. 2018PR45. Thus, we need not address whether there were any issues with Thompson's request.

issues related to the Trustee's competence and how the Trustee was administering the Estate's plan and distributing property among the beneficiaries. Allowing Griswold to substitute on Judge Biskupic in this plainly successive litigation runs contrary to the policy behind the substitution statute, which is to prevent a litigant from "'test[ing] the waters' with a particular judge before requesting substitution." *See **Matthews***, 397 Wis. 2d 1, ¶21 (citation omitted). Put simply, Griswold raised and participated in many kinds of substantive matters in the probate court, most of which involved the merits of the issues in this case. *See **id.***, ¶18 (defining "preliminary contested matters" as substantive issues that go to the ultimate merits of the case). Nothing in the statute indicates that the "preliminary contested matters" had to occur within the particular case at issue; rather, the statute says "any" such matters. We are not aware of any authority to the contrary, and Griswold cites none.

¶23 Further, contrary to Griswold's argument in his reply brief, Griswold did not maintain in his various pleadings any distinction between "probate" and "trust" proceedings, per se, and we perceive none under the circumstances in these cases. At best, he is identifying varying legal arguments for addressing the merits of the same issues. In any event, the issues in these cases need not be identical, but rather the issues previously litigated need only go to the merits of the present case, which they plainly do.

¶24 Finally, we note that any review by this court of a chief judge's decision—or, in this case, one by a deputy chief judge acting in the event of the chief judge's absence or unavailability—regarding a request for judicial substitution must be made by a petition for supervisory writ to this court, *see **State ex rel. James L.J. v. Circuit Ct. for Walworth Cnty.***, 200 Wis. 2d 496, 503, 546 N.W.2d 460 (1996), which did not occur here. Griswold merely incorporated his arguments

regarding Judge Schneider's order in this standard appeal. Regardless, for the reasons explained above, Griswold's claims of error regarding his requests for judicial substitution fail on the merits.

### III. Griswold does not establish any prejudice to him from the circuit court denying his requests for the waiver of his fees and costs in prosecuting this action.

¶25     In November 2019, the circuit court denied Griswold's petition to waive payment of his fees and costs in this action, including e-filing fees, on the grounds that Griswold had only completed section 1 of the petition, which therefore made his petition insufficient, and that it lacked "completeness and full financial disclosure." Griswold filed two more petitions, both with section 2 of the form completed, in June 2020 and April 2021, respectively. The former petition appears to have been deemed denied due to inaction by the circuit court. The latter included a formal motion that seemed to again seek the waiver of all fees and costs, but it was also specifically directed at Griswold's "appeal record transfer" and transcript fees. The court granted the April 2021 motion in May of that year.

¶26     Griswold argues that the circuit court erred by denying his petitions for waiver of fees and costs until May 2021 because he has always been determined to be indigent in prior court actions, and he submitted an affidavit/court form stating he was currently indigent due to his receipt of two types of means-tested public assistance. Griswold claims that not initially waiving his fees and costs denied him due process because he was delayed in participating in e-filing and receiving notices of case activity and the delay otherwise negatively affected him, all resulting in him being "denied unfettered access to the judicial process" due to his indigency. Griswold further points to the fact that, in May 2021, the day after he filed in this court petitions for supervisory writs seeking to have us order the circuit court to

have his appellate-related fees waived, the circuit court granted Griswold's then-pending April 2021 petition to waive his payment of fees and costs, including transcript fees. On appeal, Griswold also summarily contends that the delay in the court ordering a waiver of his fees and costs caused the Trusts themselves to incur additional fees.[7]

¶27 It appears—and we assume without deciding—that the circuit court erred by failing to determine, earlier in the case, that Griswold was indigent for purposes of filing fees and costs and participating in the e-filing system. The record reflects that Griswold had represented that he was receiving money from some of the means-tested public assistance programs that would qualify him as indigent for purposes of filing fees and costs and participating in the e-filing system. *See* WIS. STAT. § 814.29(1)(d)1.

¶28 Griswold, however, fails to make any developed argument that he was prejudiced by any such error. He claims that notices and filings were delayed in being sent to him and that he had to demand them from court offices. Griswold's arguments, however, do not show that he was unable to meaningfully participate in the litigation at any point. Not being able to participate in e-filing and having to navigate otherwise properly filed papers with the court do not, in and of themselves, show a denial of a meaningful opportunity to participate in this lawsuit. While Griswold claims in his reply brief that "several critical deadlines passed that were wholly unknown to" him, he fails to support this statement with citation to the record and further explanation. We therefore reject Griswold's arguments as undeveloped. *See Pettit*, 171 Wis. 2d at 646-47.

---

[7] Thompson takes no position on the issue, other than to note that our decision on this issue does not affect the underlying merits of this case.

¶29     Furthermore, to the extent that Griswold intends to argue that any delay in the proceedings in this case caused him or the Trusts to unnecessarily incur more fees, he fails to explain why the circuit court's earlier denials of his petitions for waiver of fees and costs proximately caused this result. In any event, our review on this appellate issue is limited to whether Griswold has a claim for reversible error regarding his payment of fees and other costs in this action without them being waived. To the extent Griswold intends to argue that this issue absolves him from paying fees and costs associated with the administration of the Trusts, he is wrong.

¶30     For the foregoing reasons, including most prominently Griswold's failure to sufficiently develop an argument showing that he was prejudiced by the circuit court's decisions regarding his petitions for waiver of fees and costs, we conclude that any error from those decisions did not deprive him of the opportunity to meaningfully participate in this litigation.

## IV. Griswold is not entitled to any relief regarding the conduct of discovery in this action, including the circuit court's rulings regarding discovery.

¶31     As noted earlier in this opinion, Griswold's legal arguments are, at times, difficult to comprehend. That assessment is particularly applicable to his arguments that he was denied discovery in this litigation and, in particular, that the circuit court erred by denying his April 7, 2020 "Petition for Discovery."

¶32     It is plain from the record that Thompson provided Griswold with numerous documents and other information about the probate proceedings and the Trusts. Still, Griswold served Thompson with thirty-four requests for admission, nineteen interrogatories (although, with the attendant subparts, that number far exceeded the statutory maximum of twenty-five, *see* WIS. STAT. § 804.08(1)(am)), and two broadly stated requests for production of documents. In response,

13

Thompson sought a protective order, arguing that Griswold's discovery requests were not permitted under the applicable probate discovery procedures and were otherwise unduly burdensome. The circuit court agreed, ordering that Griswold was not entitled to discovery in the instant matter and that Thompson was not required to respond to Griswold's pending discovery requests.

¶33    Following that order, Griswold filed the "Petition for Discovery." This time, Griswold asserted he was petitioning the circuit court for discovery pursuant to WIS. STAT. § 879.61, which permits the court, in its discretion, to "subpoena witnesses and compel the production of evidence" when a petition states that a

> person has concealed, stolen, conveyed or disposed of property of the estate; or is indebted to the decedent; possesses, controls or has knowledge of concealed property of the decedent; possesses, controls or has knowledge of writings which contain evidence of or tend to disclose the right, title, interest or claim of the decedent to any property; or possesses, controls or has knowledge of any will of the decedent.

In his petition, Griswold extensively argued why he believed such discovery was warranted under the circumstances of the Trusts' administration, including his continued allegations of improper conduct by Thompson and the attorneys involved in this case.

¶34    Thompson filed a response, contending that Griswold's petition failed to state a basis for discovery under WIS. STAT. § 879.61. Thompson argued, among other things, that the petition only alleged disagreement over how the Trusts were administered, rather than alleging any facts showing that Thompson had knowledge of concealed property of the decedent.

14

¶35   In a detailed written decision, the circuit court denied Griswold's petition.  The court ably explained its reasoning, including the following:

> In applying the [factors from *Wisconsin Valley Trust Co. v. Wisnewski*, 100 Wis. 2d 391, 302 N.W.2d 79 (Ct. App. 1981),] the [c]ourt[] finds that the discovery sought by Griswold is generally not warranted.  The accounting provided in Thompson's Amended Petition for Instruction should answer Griswold's questions about how the Trusts have been administered.  In addition, the potential for abuse in allowing Griswold to pursue discovery is great given the voluminous number of requests and the argumentative tone with which Griswold pursues his requests.  Even when Griswold makes a reasonable argument, he surrounds it with so much irrelevant commentary that it is often difficult to discern his meaning.  And, as the [c]ourt [h]as already explained, much of what Griswold complains of as improper conduct is entirely proper.  Finally, Griswold has an alternative source for at least some of the information he seeks in that he could seek an accounting from the trustee for the trust created for his own benefit.

¶36   The circuit court also noted that Thompson should provide "additional information … on the point of litigation expenses incurred in defending the Trusts against claims brought by Griswold."  Thompson promptly did so.  The court denied Griswold's subsequent motion for reconsideration, expressly noting that Griswold failed to allege any improper conduct by Thompson and that the potential for abuse was "great given the voluminous number of requests and the argumentative tone with which Griswold pursues his requests."

¶37   Following the filing of a proper petition pursuant to WIS. STAT. § 879.61, the probate court may order discovery in the matter "as is just and proper." In other words, whether to permit discovery is solely within the circuit court's

discretion.[8] *Wisnewski*, 100 Wis. 2d at 395-96. In determining whether discovery is necessary, courts consider the following factors: "(1) The extent to which an opportunity for a quick and complete examination had been provided to prevent deception or surprise; (2) the potential abuse of discovery as a fishing expedition, delaying tactic or harassment device; and (3) the availability of alternative discovery methods." *Id.* at 396.

¶38    Generally speaking, Griswold claims that the circuit court erroneously exercised its discretion by denying his discovery petition. Griswold appears to believe that there exists a second trust instrument which creates his separate, "spendthrift" trust and that the Trustee has failed to disclose it. But the court, through its various orders outlined above, determined that Griswold was provided with all of the Trust documents to which he is entitled. That Griswold believes another document exists does not make it so.

¶39    In any event, we review the circuit court's decisions regarding discovery in this matter only for whether the court erroneously exercised its discretion. As highlighted above, the court more than sufficiently explained that, with one exception regarding attorney fees, discovery—including that which Griswold specifically requested—was not warranted. In doing so, the court determined that much of the information being sought had already been provided, that the potential for abuse by Griswold was great, that he had other lawful and accessible avenues to obtain much of the information, and that most of Thompson's conduct about which Griswold complained was indeed proper conduct. We reject

---

[8] This court will sustain a discretionary decision where the circuit court "examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach." *Gaugert v. Duve*, 2001 WI 83, ¶44, 244 Wis. 2d 691, 628 N.W.2d 861 (citation omitted).

any contention from Griswold that the court erroneously exercised its discretion in this regard.

**V. The circuit court did not err by denying all of Griswold's claims for relief on the merits.**

¶40    As noted above, on June 15, 2020, Griswold filed a 149-page "[c]omplaint" against Thompson and the two law firms that had represented her, asserting various breaches of fiduciary duty and conspiracies. The circuit court, liberally construing the complaint as a petition filed under WIS. STAT. § 879.01, dismissed the claims against both law firms, upon their motion. The court concluded that it lacked jurisdiction over Griswold's claims against the firms, which were not probate-based claims, and noted that even if the court had jurisdiction, the complaint, for a number of reasons, failed to state any valid legally cognizable claims against the law firms. Meanwhile, Thompson moved to strike the remaining claims on the ground that Griswold was merely attempting to repackage breach of fiduciary duty claims against her that he had already made and that remained pending in the case.

¶41    On February 10, 2021, the circuit court issued decisions and orders finding that, despite his many and verbose filings, Griswold failed to substantiate any allegations of a breach of fiduciary duty. In particular, the court noted that Griswold "complained about actions that were perfectly legal and reasonable under the circumstances of this case" and "never presented this [c]ourt with proof of wrongdoing or even sufficient factual allegations upon which Griswold could be entitled to relief." According to the court:

> Although Griswold labels his claims differently and alleges a larger conspiracy at work than he has previously articulated, in his [c]omplaint, Griswold is still challenging how Thompson is administering the Trusts. In addition,

17

> Griswold alleges no facts supporting actual wrongdoing by Thompson. Griswold assigns a sinister motive to Thompson's actions, but he has not identified a single act of self-dealing or a breach of her fiduciary duties.

The court then directed Thompson to file the final accounts for court approval.

¶42 Griswold vaguely argues that the circuit court erred by dismissing his complaint. He asserts only that the court ignored his allegations regarding Thompson's improprieties and essentially "rubber stamped" her actions. But he fails to explain his generalized criticism, other than to attempt to incorporate by reference his pleadings and circuit court exhibits. Griswold then randomly quotes from various cases, without explaining with any clarity how they purportedly support his argument that the court erred by dismissing his claims. Indeed, he does little to engage with the court's well-reasoned February 10, 2021 decisions and orders, failing to directly address any of the court's analyses contained therein.

¶43 Accordingly, we fully agree with Thompson's argument that Griswold's contentions that the circuit court erred by dismissing his claims are undeveloped and conclusory, and we should not consider them. *See Pettit*, 171 Wis. 2d at 646-47. As Thompson aptly notes:

> Griswold fails to allege which claims he believes were improperly dismissed, and to the extent he is referring to all of his claims against all of the various parties he names in his [c]omplaint, he fails to set forth any of the elements necessary to establish those claims, fails to point to any facts alleged in his [c]omplaint to support his claims, and fails to point to any particular misstep by the circuit court in dismissing the [c]omplaint in its entirety.

It is Griswold's burden to present a comprehendible argument for how the court committed reversible error by dismissing his claims. *See Gaethke v. Pozder*, 2017 WI App 38, ¶36, 376 Wis. 2d 448, 899 N.W.2d 381. Moreover, he must do so in

18

his appellate briefs, not by suggesting that multiple-page circuit court submissions somehow contain the answers we are supposed to find. *See* WIS. STAT. RULE 809.19(1)(e) (requiring the appellant's brief to include the appellant's argument, "the reasons therefor, with citations to authorities, statutes and parts of the record relied on"); *see also **Mogged v. Mogged***, 2000 WI App 39, ¶19, 233 Wis. 2d 90, 607 N.W.2d 662 (stating that it is not this court's duty to sift through the record to find facts that will support an argument). Griswold has failed to do any of these things.

¶44 Notably, after Thompson assailed Griswold's arguments regarding the dismissal of his complaint as being undeveloped, Griswold's reply brief stated, on this issue, only:

> Thompson's argument here entirely skipped recognition that Griswold's June 15 … complaint was dismissed prior to having even been docketed in the record, notwithstanding backdating its docketing now feints an entirely different presumption of fairness … which simply just wasn't considered prior to dismissal here. Griswold believes the appeal record adequately presents why dismissal of his complaint was erroneous.

Needless to say, this reply did nothing to overcome Thompson's criticisms regarding the dearth of substance in Griswold's argument, as outlined above.[9]

¶45 Furthermore, upon our independent review of this case, we agree with the circuit court's conclusion that Thompson's conduct of which Griswold complains was entirely proper, and it certainly did not constitute any breach of her

---

[9] Griswold makes arguments about the circuit court allegedly backdating documents that he filed, but he has not proven that this occurred. In any event, he does not explain how any such "backdating," if it happened, matters, and we do not perceive any such reason. Suffice it to say, any notion that Griswold was not properly or sufficiently "heard" by the court is absurd, given the conduct of this litigation and the court's numerous orders explaining its various decisions.

fiduciary duties. As such, we cannot conclude that the court erred by dismissing any of Griswold's claims against Thompson or the law firms.

## VI. The circuit court did not err by allocating Thompson's attorney fees to Griswold's Trusts' share.

¶46 In her March 23, 2020 "Amended Petition for Instructions, Approval of Accounts, and Discharge of the Trustee," Thompson sought instructions from the circuit court and confirmation of her authority so that she could prepare a final accounting of the Trusts. As part of that petition, Thompson noted that Griswold's "baseless[] and repetitive[]" litigation efforts had "needlessly" caused a significant and "waste[ful]" expense to the administration of the Trusts, totaling approximately $71,382.26 based upon the accounting of the Trusts. Various beneficiaries had expressed concern with having to bear these expenses from their own shares of the Trusts' proceeds, and they requested that the expenses be allocated to, and paid from, Griswold's share, pursuant to WIS. STAT. § 701.1004(1). Thompson requested instructions from the court on whether the litigation expenses should be allocated against Griswold's share specifically or from the Trusts as a whole, before dividing assets into separate trust shares. Griswold opposed the request to draw payment of Thompson's attorney fees from his beneficiary share, claiming that his actions were done in good faith and on behalf of all of the beneficiaries.

¶47 As noted earlier in this opinion, *see supra* ¶36, Thompson's counsel submitted billing invoices and additional information showing the litigation expenses that the Trusts had incurred. Griswold objected to this submission on the bases that the stated fees were unreasonable and the amount of time billed was deceptive, including Thompson's use of redactions. He also argued that WIS. STAT. § 879.37 precluded allocating Thompson's attorney fees to him. In response, Thompson first explained that the narratives for the legal fees were redacted in the

invoices because such entries may reveal legal work product or attorney-client communication, both of which are privileged under the law. Second, Thompson noted that § 879.37 is inapplicable in probate matters, where the Wisconsin Trust Code has its own provisions addressing fees. Thompson noted that, in the end, "Griswold has been given sufficiently detailed information such that he can raise any objections to the *reasonableness* of the fees incurred."

¶48    On June 26, 2020, the circuit court issued a written decision addressing the issues in Thompson's Amended Petition. The court applied the factors for resolving disputes over the reasonableness of attorney fees set forth in WIS. STAT. § 814.045(1), SCR. 20.1:5(a), and ***Kolupar v. Wilde Pontiac Cadillac, Inc.***, 2004 WI 112, 275 Wis. 2d 1, 683 N.W.2d 58, and concluded that it was "appropriate to deduct fees incurred as a result of litigation initiated by Griswold from his share."[10] It did so largely because it found that much of Thompson's legal work "would not have had to be completed but for litigation commenced by

---

[10] We note that the circuit court "granted" Thompson's "Petition for Instruction Regarding Attorney Fees" in this respect. We take this to mean that the court adopted one of Thompson's requests for how the recoverable litigation expenses should be recovered "from" Griswold. Namely, in the prayer for relief in Thompson's petition, she sought instruction on whether those expenses "should be (i) paid from the Trusts before dividing the balance into separate trust shares for each of the beneficiaries or (ii) allocated to and paid from the share for Greg Griswold, such that the shares for the other beneficiaries will not be [a]ffected by [those] expenses."

While the circuit court's order is unclear in this respect, we understand the proper approach to be that Thompson's costs and expenses, including all of her legal fees, unrelated to litigation with Griswold ($2,568.02) first be reimbursed from the Trusts' assets generally, after which the amount of the distributions to each beneficiary is determined from the remaining funds, and *then* the applicable fees will be deducted from whatever monetary share Griswold would otherwise receive.

Griswold."[11]  In doing so, the court reviewed the fees and costs submitted by Thompson, found the rates and most of the time reported to be reasonable, and chose to remove certain litigation expenses that were not "exclusively Griswold-oriented work[,]" totaling $2,568.02.

¶49     Griswold filed motions seeking reconsideration of the circuit court's June 26, 2020 decision, which were denied.  Besides seemingly again contending that Thompson's attorney fees were unreasonable, Griswold argued in these motions his belief that spendthrift provisions in the Trusts prevented the allocation of litigation expenses against his share, apparently because doing so would subvert Eleanor's intent that Griswold receive his whole share.  The court rejected these arguments, noting that Wisconsin's Trust Code expressly gave the court authority to award attorney fees to be paid by a party, such as Griswold, who caused unnecessary fees to be incurred during the administration of a trust, including litigation necessary to complete it.  The court further noted that this statutory authority was not eliminated by any of provisions in the Trusts that Griswold cited regarding Eleanor's intent.

¶50     "In a judicial proceeding involving the administration of a trust, the court, as justice and equity may require, may award costs and expenses, including reasonable attorney fees, to any party, to be paid by another party or from the trust that is the subject of the controversy."  WIS. STAT. § 701.1004(1).  Whether to award attorney fees to a trustee is within the sound discretion of the circuit court.  *See **Trust of Rene von Schleinitz v. Maclay***, 2016 WI App 4, ¶36, 366 Wis. 2d 637, 874

---

[11] Indeed, the circuit court noted as early as in its June 2020 decision regarding Griswold's discovery requests that "Griswold's complaint about [Thompson's] attorney fees incurred is ironic since Griswold himself is responsible for much of the attorney fees."  The court added that "Griswold has made the administration of the Trusts more complicated than necessary by litigating every suspicion that has arisen in his mind and asserting rights that he does not possess."

N.W.2d 573 (2015). We review discretionary decisions under the deferential erroneous exercise of discretion standard, ***Olson v. Darlington Mut. Ins. Co.***, 2009 WI App 122, ¶5, 321 Wis. 2d 125, 772 N.W.2d 718, and we will uphold such decisions as long as the circuit court "examine[d] relevant facts, applie[d] a proper standard of law, and, using a demonstrated rational process, reache[d] a conclusion that a reasonable judge could reach," ***State ex rel. Kurtzweil v. Sawyer Cnty. Zoning Bd. of Appeals***, 2023 WI App 43, ¶10, 409 Wis. 2d 77, 995 N.W.2d 286 (citation omitted). On appeal, the appellant, here Griswold, bears the burden of convincing us that the circuit court erred in its decision. *See **Gaethke***, 376 Wis. 2d 448, ¶36. In addition, we will uphold a circuit court's determination of the amount and reasonableness of attorney fees unless the court's decision is clearly erroneous. ***Kolupar***, 275 Wis. 2d 1, ¶22.

¶51    Once again, it is difficult to decipher Griswold's arguments regarding this issue on appeal. He makes no developed argument as to whether or how the circuit court incorrectly calculated the fees caused by his litigation or how particular litigation expenses were unreasonable, either in terms of the rate or the time spent. In other words, he does not directly quarrel with the court's determination of the amount and reasonableness of the attorney fees.

¶52    Rather, it appears Griswold believes that the circuit court erred as a matter of law because it had no authority, in the first instance, to offset Thompson's attorney fees against his trust share, especially his share alone. Citing WIS. STAT.

§§ 701.1004(4) and 701.0502(2),[12] he again claims that the Trusts prohibit the involuntary alienation of funds from his "spendthrift trust." He seems to contend that whatever fees he may owe must be assessed against him personally as a debt, while his trust share must remain intact. Presumably, the notion is that either Thompson or the other beneficiaries must then attempt to collect that debt from Griswold, but only after he has received his entire beneficial share pursuant to the terms of the Trusts.

¶53 Griswold is mistaken. The provisions in the Trusts—including those creating the resulting trust that will contain Griswold's share of the Trusts after they are closed—operate according to their terms, subject to the provisions in the Wisconsin Trust Code, WIS. STAT. ch. 701. But nothing in the general terms of the Trusts or WIS. STAT. §§ 701.1004(4) and 701.0502(2) prevents the proper application of § 701.1004(1), when the circuit court does so in its equitable discretion. That result is not a "seizure" of Griswold's share, as he contends, but instead effectuates the legislature's intent to allow courts to allocate costs, including attorney fees, to those parties responsible for such costs. In other words, we agree with the circuit court's reasoned statements that the authority under § 701.1004(1) to award attorney fees to be paid by Griswold is not overcome by any provisions in the Trusts.

---

[12] WISCONSIN STAT. § 701.0502(2) states that, subject to the provisions in § 701.0502(1), "a term of a trust providing that the interest of a beneficiary is held subject to a spendthrift trust, or words of similar import, restrains both a voluntary and involuntary transfer of the beneficiary's interest." WISCONSIN STAT. § 701.1004(4) states that a trust provision "drafted or caused to be drafted by a trustee" that modifies the application of § 701.1004 (relating to attorney fees and costs) "in a manner favorable to the trustee … and potentially detrimental to a beneficiary is invalid with respect to the trustee" unless the trustee "proves that the provision was fair under the circumstances existing at the time the trust instrument was signed and the existence and contents of the provision were adequately communicated to the settlor."

¶54　　In all, as explained above and further augmented by the record in this case, the circuit court considered the proper law, applied it to the facts, and reached a reasonable decision.  Accordingly, we uphold the court's determination, pursuant to WIS. STAT. § 701.1004(1), to have the amount of expenses and attorney fees incurred by Thompson due to Griswold's wasteful and needless litigation paid by Griswold and taken from his share of proceeds from the Trusts.

*By the Court.*—Judgment and orders affirmed.

This opinion will not be published.　*See* WIS. STAT. RULE 809.23(1)(b)5.